IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS MELO-CASTILLO,<br>933 Oley Street<br>Reading, PA 19604 | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.: |
| vs. | : | |
| | : | |
| SERGEANT MICHAEL BALCH,<br>*Individually and in his official capacity as a*<br>*member of the Reading Police Department*<br>815 Washington Street<br>Reading, PA 19601, | : | |
| JOHN/JANE DOES I-IV,<br>*Individually and in their official capacity as*<br>*members of the Reading Police Department*<br>815 Washington Street<br>Reading, PA 19601, | : | **Jury Trial Demanded** |
| MAYOR EDDIE MORAN,<br>*Individually and in his official capacity as*<br>Mayor of the City of Reading<br>815 Washington Street<br>Reading, PA 19601, | : | |
| ELIAS VAZQUEZ<br>*Individually and in his official capacity as a*<br>*Chief of the Reading Police Department*<br>815 Washington Street<br>Reading, PA 19601, | : | |
| and | : | |
| CITY OF READING<br>815 Washington Street<br>Reading, PA 19601, | : | |
| Defendants. | : | |

1

## COMPLAINT

**NOW COMES**, the Plaintiff, **LUIS MELO-CASTILLO**, by and through his legal counsel, Charles E. Dutko, Esquire, and does hereby allege and aver the following:

### I.    JURISDICTION AND VENUE

1. This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 (hereinafter referred to as the "Act"), as amended, 42 U.S.C. §§ 1983 and 1988.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4), and § 1367(a), regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3. Venue in the Eastern District of Pennsylvania is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of the City of Reading, Pennsylvania, in particular.

### II.    PARTIES

4. Plaintiff Luis Melo-Castillo (hereinafter "Melo-Castillo" or "Plaintiff") is an adult individual who at all times pertinent hereto resided at 933 Oley Street, Reading, Pennsylvania 19604.

2

5. Defendant Sergeant Michael Balch (hereinafter referred to as "Balch") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Reading Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Reading. Defendant Balch was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

6. Defendant(s) John/Jane Does I-IV (hereinafter referred to as "Doe") are adult individual(s) who, at all times relevant hereto, was/were serving in his/her/their capacity as a sworn officer(s) of the Reading Police Department, and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the ordinances of the City of Reading. Defendant(s) Doe was/were entrusted to protect the Constitutional rights of those he/she/they encountered, and at all times relevant hereto, was/were acting under the authority and color of law, and in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

7. Defendant Mayor Eddie Moran (hereinafter referred to as "Mayor" or "Moran") is an adult individual who is an elected official of the City of Reading and is in direct supervision of the Police Department and its

3

sworn members, and also of the selection of supervisory personnel for the Reading Police Department, who are, in turn, by and through him, responsible for the formulation and/or implementation of practices, policies, customs and procedures, as well as the day-to-day operation and oversight, including command and control, of all segments of the Reading Police Department. Mayor Moran either has, or has failed to, promulgate and/or enforce laws, rules, regulations and General Orders concerning the operations of the Reading Police Department, and who, at all times relevant hereto, was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance, and supervised or controlled one or more of the other Defendants herein, in their conduct or actions, or inactions, or acted in concert with them, in the performance of their conduct or actions. It is believed, and therefore averred, that Defendant Mayor Moran exercises/exercised authority over the selection, staffing, retention, training, promotions, discipline, and operational functions of the Reading Police Department, with the final and unreviewable decision-making authority of a policymaker.

8. Defendant Chief Elias Vazquez (hereinafter referred to as "Chief" or "Chief Vazquez") is an adult individual who, at all times relevant hereto, was a sworn member of the Reading Police Department with the rank of Chief who was responsible for the formulation and/or implementation of practices, policies, and procedures, discipline and assignment of officers,

hiring and firing, as well as the day-to-day operation and overseeing the command and control of all segments of the Reading Police Department, and who at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance, and supervised or controlled one of more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently. It is believed, and therefore averred that Defendant Chief Vazquez, along with Defendant Mayor Moran, at pertinent times, were the ultimate authorities for the staffing, promotions, discipline and/or operational functions of the Reading Police Department, with the final and unreviewable decision-making authority of policymakers, and were supposed to act in concert to achieve its mission and legal obligations.

9. Defendant City of Reading (hereinafter referred to as the "City") is a municipal corporation, City of the Third Class, and governmental entity within the Commonwealth of Pennsylvania, empowered to establish, regulate, and control its Police Department for the enforcement of laws and ordinances within its jurisdiction, and for the purpose of protecting and preserving the persons, property and the Constitutional rights of individuals within and without the geographical and legal jurisdiction of the Defendant City, through the use of a well-trained and directed police force.

### III.    PRE-DISCOVERY FACTUAL ALLEGATIONS

10.    In the early evening of June 8, 2024, the Plaintiff gathered with friends at the Pagoda on Mount Penn in Reading, Pennsylvania.

11.    Plaintiff intended to participate in a photo shoot to promote a clothing business that he owns.

12.    Around 200 people were present at the Pagoda that evening for a general social gathering.

13.    It is believed that police received complaints about the level of noise coming from the parking area outside of the Pagoda.

14.    Defendant Balch was the first police officer on scene with other officers arriving several minutes later.

15.    Defendant Balch was assigned to a special detail that evening, which was specifically targeting the use of dirtbikes within city limits.

16.    Upon arrival, Defendant Balch exited his patrol vehicle and approached a group of dirtbikes in the parking lot.

17.    Instead of waiting for the rest of the officers, Defendant Balch chose to enter the crowd alone.

18.    Upon approaching the group, two of the dirtbikes drove away from the scene, leaving only Plaintiff sitting on the bike and not moving.

19.    Defendant Balch stated, "Don't even think about it."

20.    Plaintiff disembarked and was standing next to the bike.

21.    At no point did Defendant Balch tell Plaintiff that he was detained, under investigation, or that he was violating any laws, nor did Defendant Balch even attempt to ascertain whether the bike belonged to Plaintiff.

22.    The dirtbike in question was turned off, and Plaintiff did not attempt to turn on the ignition at any point while on or off the bike in Defendant Balch's presence.

23.    Plaintiff did not attempt to run or turn away from Defendant Balch.

24.    Then, without provocation, Defendant Balch grabbed the Plaintiff by his hooded jacket and forcibly pulled him over the bike causing Plaintiff, Defendant Balch, and the bike to fall to the ground.

25.    The crowd immediately responded by circling around Plaintiff and Defendant Balch and started yelling at Defendant Balch to leave the Plaintiff alone and release him.

26.    While this was occurring, Plaintiff was on the ground in Defendant Balch's grasp but not resisting in any way.

27.    Members of the crowd repeatedly took hold of Plaintiff's hands, wrists, and legs in attempts to pull him free of Defendant Balch's grasp, but Plaintiff rejected these attempts and never engaged in any action designed to free himself of Defendant Balch's hold.

28. At least one member of the crowd struck Defendant Balch in the face, causing Defendant Balch to lunge at the individual while still holding onto Plaintiff and effectively dragged Plaintiff along the parking-lot surface and twisted Plaintiff into a painful position that caused or contributed to a pinched nerve and substantial pain in Plaintiff's back.

29. Defendant Balch struck Plaintiff with a closed fist in the head at least two times, but possibly more, causing substantial pain.

30. The Plaintiff, after being struck in the head, became dazed and believed he was going to pass into unconsciousness.

31. Defendant Balch then put Plaintiff in a choke hold and for approximately one-minute squeezed Plaintiff's neck and throat with enough force that Plaintiff's voice and breathing was significantly impacted.

32. The Plaintiff, through a strangled voice, repeatedly stated that Defendant Balch was choking him and he could not breath.

33. The sound and quality of Plaintiff's voice, caught on Defendant Balch's body-worn camera system, clearly and unquestionably gave Defendant Balch notice that he was impeding the Plaintiff's airway and/or breathing.

34. The Plaintiff, being unable to breathe, thought he was going to die.

35. Numerous by-standing citizens attempted to break the Plaintiff free from Defendant Balch's chokehold, and several yelled at

Defendant Balch that he was choking Plaintiff and pleaded with Defendant Balch to stop.

36. Defendant Balch told the on-looking crowd to relax, that everything is fine, and assured them that Plaintiff could breathe just fine.

37. Defendant Balch's assault against Plaintiff lasted approximately four minutes, the entire time causing great physical, mental, and emotional distress and pain to the Plaintiff.

38. When backup police officers arrived, Defendant Balch released his hold on the Plaintiff, and the Plaintiff was handcuffed without incident.

39. After the scene calmed down, Defendant Balch was walking away, and an unknown individual was recording the situation with his phone.

40. Defendant Balch struck the phone out of this individual's hand with no provocation at all.

41. Defendant Balch: (a) acted intentionally and without regard for the rights and safety of the Plaintiff; (b) gave none of the required oral commands (to "stop", that Plaintiff was "under arrest" etc.) which are standardly required before any physical force, of any kind, is used upon the Plaintiff; (c) was aware that the Plaintiff had not, and did not threaten him (Balch) or anyone else, orally or physically; (d) had no reason to believe that the Plaintiff was armed; and (e) knew that the Plaintiff was not attempting to flee.

42.    Defendant Balch received no discipline at all for his malevolent and intentional assault of the Plaintiff and was in fact promoted to sergeant in February of 2026, several months after this incident.

43.    Defendant Balch had a duty as a Reading police officer to promptly report the true nature of his conduct but did not, to cover-up his conduct and to pervert the judicial process.

44.    It is believed that the Reading Police Department did not conduct an internal investigation into Defendant Balch's assault of the Plaintiff.

45.    Instead of an investigation into Defendant Balch's conduct, the police department criminally charged the Plaintiff with Resisting Arrest of Other Law Enforcement[1], and Disorderly Conduct[2] for allegedly creating a hazardous or physically offensive condition.

46.    Plaintiff, after a jury trial, was acquitted of all criminal charges.

47.    Plaintiff's physical injuries were serious and included pinched nerves in his back.

48.    The injury may continue to require the Plaintiff to receive medical treatment into the indeterminate future, with the potential of being permanent in nature.

---

[1] 18 Pa.C.S. § 5104
[2] 18 Pa.C.S. § 5503(a)(4)

49.    Due to the events of that evening, Plaintiff has also suffered serious psychological damage, which will continue into the future.

50.    It is believed that the Reading Police Department officers have a history of violence, the excessive use of force, and Constitutional violations were well known to their supervisors, policymakers, and the Defendant City. This history has gone undisciplined and, in essence, the Defendants past actions were condoned and encouraged by their supervisors and the City, leading to the Constitutional violations complained of in this action.

51.    No discipline of any kind was imposed upon Defendant Balch, nor any other responding officers, who assisted in covering up his clearly unconstitutional conduct.

52.    It is believed and therefore averred that any internal investigation by the Reading Police Department engaged in only a superficial, pro forma investigation and a cover-up of the instant assault, if they conducted any such investigation at all.

53.    In this case, no appropriate investigation was undertaken, no discipline was issued, and no retraining was ordered by Mayor Moran, Chief of Police Vazquez, or any supervisor regarding the clear, unconstitutional assault committed by Defendant Balch against the Plaintiff.

54.    This lack of appropriate investigation and discipline is a long-standing practice and custom of the Reading Police Department and

further evidence that supervisors and decision-makers such as Defendants Moran and Vazquez, were not only deliberately indifferent, but that violations of citizens' Constitutional rights were condoned, if not encouraged, by supervisors and decision makers of the City of Reading, and became a custom or *de facto* policy with the Police Department.

55.    For years, the Reading Police Department and City of Reading provided inadequate training to its officers, including obviously Defendant Balch, pertaining to the appropriate use of force to employ in given circumstances, or how to effect an arrest; and, no appropriate remedial training for Defendant Balch was ever provided, even after this incident.

56.    Historically, the Reading Police routinely used excessive force in the performance of their duties, and with perhaps a limited number of exceptions, no disciplinary action was taken in any of those incidents.

57.    Prior to the incident giving rise to Plaintiff's Complaint, the written policies that existed regarding the appropriate use of force to be utilized in circumstances akin to those encountered here, and commonly encountered by law enforcement, were routinely ignored and, this abuse was accepted as the common practice and custom within the Department.

58.    Despite repeated incidents and complaints of excessive use of force committed by Reading Police Officers, no significant efforts were made to establish or ensure the actual proper use of force standards within the

12

Police Department. No efforts were made to ensure citizens' Constitutional rights were not violated.

59.   The internal investigations are routinely operated, not to make a legitimate inquiry into police wrongdoing, but as a vehicle to cover up, falsely justify, and otherwise ignore or exonerate police misconduct, thereby ensuring its perpetuation.

60.   This custom and de facto policy supported an ongoing culture within the Reading Police Department, which not only condoned but encouraged the sort of constitutional violations that occurred here, with each Officer knowing that his misconduct would go unpunished and undeterred.

61.   The aforesaid acts and omissions of Defendant Balch evidenced a deliberate indifference to the rights guaranteed to individuals, such as Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution and under Article I, of the Pennsylvania Constitution.

62.   At all times relevant hereto, the legal principles regarding the rights of persons, such as the Plaintiff, to be free from the excessive use of force by a police officer, and the contours of that Constitutional and statutory right, were well established, and it was not reasonable for Defendant Balch to believe that his actions would not deprive the Plaintiff of those rights.

63.   The actions of Defendant Balch violated the clearly established and well-settled federal Constitutional rights of Plaintiff as more clearly set forth in the Counts below.

64. The Plaintiff did not physically resist, threaten, or assault Defendant Balch in any way, and the force used against the Plaintiff was totally and completely unnecessary, unreasonable, excessive, and outrageous, warranting the award of both compensatory and punitive damages against Defendant Balch in his individual capacity.

65. Moreover, at no time during the events described above was Plaintiff a threat to the safety of himself or others. To the contrary, he was peacefully and lawfully surrendering himself, which was fully within his rights to do so.

66. The instant assault would not likely have occurred had the other Defendants herein not historically permitted such conduct.

67. The Reading Police Department and the City of Reading, intentionally, and with deliberate indifference, did not investigate Defendant Balch's above referenced actions, or, if they did, they did the absolute minimum investigation, including, *inter alia*, refraining from interviewing key witnesses, neglecting to obtain and review video surveillance, and, instead, actively assisted in ignoring Defendant Balch's seriously unconstitutional misconduct and violations.

68. In effect, the Reading Police Department and the City of Reading, acting through its policy-makers and supervisors, have institutionalized a policy to cover-up police wrongdoing, or at the very least turn a blind eye to the wrongdoing, sending a message to both the

Department and the public at large, that Constitutional violations will not only go unpunished but, will be tolerated, if not encouraged, by the City and its policy administration.

69. The City, the Mayor, the Reading Police Department, Chief Vazquez, among other decision makers and supervisors, failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and of deliberate indifference to the rights and safety of citizens that had become the long-standing hallmark of the Reading Police Department. The Defendants herein continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by ignoring and even rewarding inappropriate actions, by failing to promulgate appropriate rules, regulations and policies; by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to properly discipline; by inappropriate hiring, training, supervision and promotional practices; and by reinforcing the old culture of deliberate indifference.

70. As a direct and proximate result of the said acts or omissions of Defendant Balch, made possible by, and compounded by, the other Defendants as stated herein, the Plaintiff suffered, *inter alia*, the following injuries and damages:

a. Physical and mental pain and suffering, in both the past and the predictable future, including discomfort, loss or use of bodily

functions, ill health, loss of sleep, and other emotional injuries, including stigma, humiliation, distress, fright, PTSD, and emotional trauma;

      b.    Medical and psychological expenses, past and future;

      c.    Loss of life's pleasures;

      d.    General damages for violation of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution; and

      e.    Punitive damages (except as to the City and Defendant Balch in his official capacity), which are justified factually as alleged herein, and legally, because Defendant Balch acted maliciously and/or wantonly in violating the Plaintiff's Constitutionally (federal and state) protected rights, and intentionally, recklessly, and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

71.    Plaintiff further seeks counsel fees, costs, and delay damages as authorized by statute.

72.    The actions of each of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff, it would be unreasonable for any Defendant to believe that they were not violating such rights as more clearly outlined in the Counts below.

16

73. Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, Plaintiff, in particular, as well as others, is likely to suffer damages from similar Constitutional violations in the future, requiring injunctive relief to issue against the said Defendants.

74. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

75. While acting under color of state law, the Defendants deprived the Plaintiff of various state and federal Constitutional rights as more fully set forth herein.

## COUNT I
## 42 U.S.C. § 1983
## Excessive Force
### Against Defendant Balch

76. The preceding paragraphs are incorporated herein by reference as though fully set forth.

77. The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force.

78. The application of force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

79. The Fourth Amendment to the United States Constitution and the cognate provision of the Pennsylvania Constitution protect persons from being subjected to excessive force while being arrested, even if the arrest is otherwise proper.

80.    Defendant Balch used excessive force in the detention and arrest of the Plaintiff in that there was absolutely no need for the application of any force, and in view of the fact that the amount of force actually used by the Defendant exceeded the amount of force which a reasonable officer would have used under similar circumstances, and force of a kind which violated standard police practices and the Reading Police Department's own policies, deficient as they may otherwise be.

81.    Accordingly, no physical force of any kind was required or should have been employed against the Plaintiff here, especially when oral commands were not employed and easily could have been.

82.    The Plaintiff did not present any threat to Defendant Balch nor any other person or property at the time he was assaulted.

83.    Defendant Balch used excessive force in his encounter with the Plaintiff when the Plaintiff surrendered himself, and Defendant Balch, by his own sworn admission, intentionally placed the Plaintiff in a neck hold and struck the Plaintiff twice with a closed fist, causing the Plaintiff grave injuries.

84.    The Defendant's use of force was not reasonable under the Constitution, where, as here, there was no need for any force, especially the degree of force that was recklessly and intentionally used.

85.    The nature and degree of the excessiveness of force unnecessarily utilized against the Plaintiff by Defendant Balch was

outrageous, reprehensible, malicious, vicious, intentional, and malevolent, and clearly warrants an award of punitive as well as compensatory damages.

86.   As a result of the excessive use of force employed against the Plaintiff in violation of his Fourth Amendment and cognate State Constitutional rights, the Plaintiff suffered damages as stated herein.

87.   Defendant Balch is liable for his personal involvement in the commission of the acts complained of here.

88.   Defendant Supervisors and Policymakers are liable for the acts of Defendant Balch pursuant to the claims of Supervisory and Policymaker liability, expressly set forth herein, and which are incorporated by reference as if set forth *et extenso* here.

89.   Defendant, City of Reading, is liable for the acts of Defendant Balch and Defendant Does pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and which are incorporated by reference as if set forth *et extenso* here.

90.   Further, the conduct exhibited by Defendants Balch and Does as subordinate municipal officers and departmental employees, which occurred on June 8, 2024, was not unexpected. Neither were they simply the deeds of an independent, non-supervisory actor. But, rather, they constituted predictable behaviors of subordinates who operate with perceived impunity due to the deliberate indifference of supervisors and policymakers, and their joint policies, practices, and customs, which operated as the moving force

behind what Defendants Balch and Does believed to be their unaccountable efforts to engage in what had become, all too customary, Constitutional deprivations.

91.    All of this is further demonstrated by the fact that Defendant Balch was promoted to Sergeant after his assault on Plaintiff.

92.    The likelihood is that, but for the alleged acts and omissions committed by other Defendants, the injuries inflicted upon Plaintiff would not have occurred.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendant Balch jointly and serverally with the other Defendants on the theories of liability alleged, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant Balch in his individual capacity and, such other relief, including injunctive relief, as the Court may find appropriate.

### COUNT II
### 42 U.S.C. § 1983
### Supervisory Liability-Policymaker Liability
### *Against Defendants Moran, Vazquez and John/Jane Does I-IV, Individually*

93.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

94.    At all times pertinent to the claims made herein, Mayor Moran, Chief Vazquez, and presently unidentified John/Jane Does I-IV, occupied both policymaking and supervisory positions within the City of Reading's Police Department and the subordinate members of its force, concerning which Defendant Balch was an officer, subordinate member, and employee.

95.    Generally speaking, Mayor Moran retained ultimate responsibility over the operations of the Police Department as the executive of Reading, a City of the Third Class, wherein Mayor Moran shared both supervisory and policymaking responsibilities with Chief Vazquez when it came to the operation of Reading's Police Department, which the Chief headed.

96.    In practice, Mayor Moran retains ultimate responsibility to supervise and monitor the overall operation of the Police Department, and Chief Vazquez is responsible for supervising and monitoring the day-to-day operations of the Department. Each had final decision-making authority concerning the operational conduct of the subordinate members of the police force; each retained the authority to measure and respond to the conduct and decisions of police subordinates; each played a role in fashioning and implementing Departmental police policies, practices, procedures, and customs, and often did so in consultation with one another. Each is a person

whose actions may fairly be said to represent official municipal policy or custom.

97. Defendants Moran and Vazquez implemented and/or oversaw policies and practices that created an unreasonable risk of Constitutional violations on the part of their subordinates, including specifically, the Defendant Balch here; their failure to change those policies or employ corrective practices is a direct cause of the unconstitutional conduct, which was inflicted upon the Plaintiff.

98. Most specifically among these practices was for Moran and Vazquez to ignore the pattern and history of Constitutional abuses committed by the police officers under their supervision, even when such was obvious.

99. The existing custom and practice followed by Defendants Moran and Vazquez were, inter alia, largely to ignore Constitutionally implicated complaints about the conduct of their officers; to fail to properly investigate them; to fail to take corrective and disciplinary action, to allow for the cover-up of police misconduct; to adopt policies which were designed to protect officers and the City from civil liability rather than to protect the citizenry from their unlawful acts; to stifle citizens' complaints; to conceal or otherwise make it extremely difficult to recover information which should be immediately available for policy maker and supervisory review and action; to settle cases requiring the gaging of victims of police misconduct and their

counsel so as to deceive the public, and to prohibit them from knowing the dangerous nature of police officers which the City employs; and to settle cases requiring the dismissal of liable police officers in exchange for placing the liability amorphously upon the City, and then requiring language admitting no liability.

100. This deliberate indifference to the violations of citizens Constitutionally protected rights, not only reinforced the justifiable belief among the citizenry that it was useless to register complaints about police misconduct and abuse, but, it created further ill-will, and even more significantly, sent a message to the members of the police force that their violations of the community's Constitutional rights would be tolerated and go unpunished, thereby encouraging further and even more serious violations, and an unreasonable risk of just the sort of harms that were visited upon Plaintiff as described herein.

101. The institutionalization of a culture of constitutionally abusive police misconduct with the Reading Police Department, which took a permissive approach to instances of *inter alia*: excessive use of force; and the filing of false of no police, Affidavits and reports, was so obvious as to be apparent to any reasonable supervisor or policymaker, including Defendants Moran and Vazquez; and, their indifference to the risks that these harmful customs, practices, and supervisory procedures presented, were the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

102. This was no truer than with the Defendants' deliberate indifference to the need to provide its officers, including most especially, defendant Balch here, with more or better training with regard to the safeguards afforded by the Fourth and Fourteenth Amendments, including particularly the prohibitions regarding the excessive use of force.

103. Defendants Moran and Vasquez were aware that their officers routinely confront situations that may require the use of force, including deadly force, that such situations often involved difficult decisions on the part of officers about how much force to use or whether to use force at all, and that excessive force liability will frequently result if officers use more force than is reasonably necessary under the circumstances.

104. Defendants Moran and Vasquez were aware of the numerous incidents of the excessive use of force that had been committed by members of the Reading Police Department in the past and failed to subject offenders to appropriate evaluation, testing, discipline, and remedial training, thereby demonstrating a tolerance of past and/or ongoing police misbehavior, through knowledge and acquiescence in their subordinates' constitutional violations.

105. Moreover, conduct the conduct exhibited by Defendant Balch on June 8, 2024, was not that of an unexpected, independent, non-policymaking actor, but constituted deliberate and predictable acts of a subordinate who operated with a rightly preserved impunity due to the

24

ongoing deliberate indifference of the supervisors and policymakers, Defendants Moran and Vasquez, and their continuation of well-established practices, policies and customs which operated as the moving force behind what the officer thought would be an overlooked and tolerated effort to engage in what had become customary constitutional deprivations.

106. The supervisory practices or procedures, which defendants Moran and Vasquez were required at a minimum to promulgate, implement, monitor and, if necessary, modify, include, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating constitutional violations; procedures whereby members of the public who have experienced constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register the complaints and receive prompt, objective responses; Procedures carefully cataloged especially excessive force complaints (legal, formal and informal) And their respective outcomes - By name, nature of claim, and resolution and corrective action if any; Procedure years for the efficient, effective, objective investigations of all claims and complaints, whether officer misconduct was alleged to be committed within or without the city, on duty or off, and for their analysis, and requiring the prompt and open imposition of disciplinary, corrective action or policy or procedural change; Procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached (necessary to restore good

25

community relations and to encourage the belief that their complaints will not be ignored); Procedures requiring remedial training in 4th amendment safeguards including limitations and proper arrest protocols on the use of force procedures requiring training and remedial retraining in the 14th amendment safeguards then, the essential need for accurate, objective and comprehensive complaint, report and affidavit writing; Practices and procedures for officer conduct which places the focus of truth seeking process on eliminating police misconduct rather than protecting it from prosecution, punishment or discipline; Procedures for the complete statistical analysis of Police Complaints from whatever source, outcomes, use of force incidents, the race of use of force victims, criminal charges filed, prosecutions pursued and criminal convictions secured, etc.; procedures which permit the prompt identification and retrieval of all complaints, outcomes, and evidence, (including videos) on an individual officer basis; etc.

107. The existing customs within the Reading Police Department created an unreasonable risk of injury to citizens, such as the plaintiff, in the absence of the above-specified supervisory practices.

108. Defendants Moran and Vasquez were aware that these risks existed because they were obvious and because they had previously resulted in constitutional claims and violations by officers under their supervision.

109. Defendants Moran and Vasquez were indifferent to these risks, given their failure to investigate, punish, or otherwise remediate past conduct which resulted in adverse consequences from those risks, and their failure to modify departmental practices, policies, General Orders, and procedures which have been brought to their attention as being seriously deficient, if not unconstitutional on their face.

110. The underlying Constitutional violations inflicted on the plaintiff resulted from Defendants Moran and Vasquez's failure to employ the above, and other, supervisory practices, or policies, and by failing to ensure the training, instruction, and monitoring not only of Defendant Balch but also of the line supervisors in the chain of command.

111. Defendants Moran and Vasquez furthered these policy failures by promoting Defendant Balch after this assault and violation of Plaintiff's Constitutional rights.

112. As a result of the deficient supervision and policy making of the Defendants, Plaintiff suffered the damages alleged herein.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiffs favor and against Defendants Moran and Vasquez and John/Jane Doe supervisors, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their

individual capacities and, such other relief, including injunctive relief, which the court may find appropriate.

## COUNT III
## 42 U.S.C. §1983
## Municipal Liability
### *Against the City of Reading*

113. The preceding paragraphs, especially those which set forth, in and of themselves, facts upon which *Monell* liability against the City of Reading will safely reside, are incorporated herein by reference as though fully set forth.

114. Prior to June 8, 2024, the Defendant City of Reading either failed to develop policies, prohibitions, or actually developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons with whom, by virtue of their policing, they would likely come into contact, which caused the aforesaid violations of Plaintiffs' constitutional rights.

115. The violations of Plaintiffs Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendant City of Reading, which has encouraged, tolerated, ratified, and has been deliberately indifferent to, *inter alia*, the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

28

a. The use of force by police officers;

b. The proper exercise of police powers, including, but not limited to, the making of an arrest, proper search and seizure, and the use of force;

c. The monitoring of officers whom it know or should have known were suffering from emotional, psychological, and/or drug-dependent problems which impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

e. Police officers' use of their status as police officers to employ the unreasonable use of force or to achieve egotistically aggressive personal ends not reasonably related to their police duties;

f. The failure of police officers to follow established policies, procedures, directives, and instructions regarding arrests and the use of force under such circumstances as presented by this case;

g. The failure to properly sanction or discipline officers who are aware of and conceal, and/or aid and abet, violations of Constitutional rights of citizens by other Reading police officers; and

h. The practice among Reading police officers of subjecting citizens to unlawful force, with the intention of precluding such individuals from instituting civil claims by covering up the events which occurred, in

29

official reports or by filing no reports at all, and by conducting sham investigations.

116. It was also the policy and or custom of the Defendant City of Reading to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated and/or justified by the City of Reading, including, but not limited to, complaints of citizens, especially minority citizens.

117. It was also the policy and/or custom of the Defendant City of Reading to inadequately screen during the hiring process (including psychological and drug screening) and to fail to intermittently test thereafter, and to inadequately trained and supervised its police officers, including Defendant Balch, thereby failing to adequately discourage further Constitutional violations on the part of its police force in general, and Defendant Balch in particular.

118. The Defendant City of Reading did not require or demand appropriate in-service training or retraining of officers who were known to have engaged in police misconduct or were known to be overly aggressive, who were known to encourage or tolerate the same.

119. No officer of any rank, in any department of the Reading Police Department, and neither Defendant Moran or Defendant Vasquez, ever came to a training director or anyone else and recommended any changes in the officer training to prevent the excessive use of force, even

though excessive force claims were numerous and, even though the City of Reading was required to pay out in excessive force claims in the recent past.

120.  It is believed and therefore averred that further discovery will reveal that the City of Reading has insisted that its settlement agreements remain confidential, so that the record shows only that the City appeared liable for its officers' actions, and not the individual officers who personally engaged in the unconstitutional acts, thereby deceiving the public and releasing and imposing dangerous officers upon an uncertain and unsuspecting public.

121. The Defendant City of Reading also did not adopt needed policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein, including specifically those that follow.

122. The lacking practices or procedures (or policies), which Defendant City of Reading was required, at a minimum, to promulgate, implement, monitor and, if necessary, modify, include, *inter alia*, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating unconstitutional violations, especially those that are driven by overly aggressive officers; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses;

31

procedures carefully cataloging complaints (legal, formal and informal), especially regarding use of force and the conduct of arrests, and their respective outcomes claims and complaints, their analysis and requiring the prompt and open imposition of disciplinary or corrective action, remedial training, or policy and procedural change; procedures for promptly responding to those who registered complaints, or whose self-reported, and for securing citizen feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures for racial/cultural sensitivity training; procedures for the active pursuit and enlistment of police officers of African-American and other minority heritages with multilingual abilities; procedures requiring remedial training and Fourth and Fourteenth Amendment safeguards including citizens Constitutional rights to be free from the excessive use of force; procedures requiring training and remedial retraining in the Fourteenth Amendment safeguards and, especially the need for accurate, objective and comprehensive report and Affidavit writing; practices and procedures for officer conduct which places the focus of the truth-seeking process on eliminating police misconduct rather than protecting it from prosecution, punishment or discipline; procedures for immediately identifying circumstances and the identity of officers who are excessive force prone and/or who file fabricated, incomplete or no reports at all; procedures for conducting both internal and external objective reviews of

all claims of unconstitutional or otherwise unlawful police conduct; procedures for identifying officers who are in need of remedial training; procedures for testing the validity and efficiency of internal investigative operations; and procedures for effectively and independently, monitoring officers drug (including steroid) or alcohol abuse (such as random testing) and for monitoring and testing officers mental health (including anger management issues).

123. Those existing defects in the practices and procedures within the Reading Police Department created an unreasonable risk of injury to persons such as the Plaintiff, in the absence of the above-specified supervisory practices and procedures.

124. The City of Reading policymakers were aware that these risks existed because they were obvious and because the risk had resulted in constitutional harms, which had occurred previously under their supervision.

125. The City of Reading policymakers were indifferent to these risks, given their failure to eliminate or remediate those responsible for the past unconstitutional consequences of said risk, and their failure to modify departmental practices, policies, General Orders, and procedures which have previously been brought to their attention as being seriously deficient, if not unconstitutional on their face.

126. It was the policy and or custom of the Defendant City of Reading to allow and even promote the excessive use of force by its officers,

33

as well as the commission of the other Constitutional violations described herein, including the cover-up of such acts and or omissions.

127. As a result of the above described policy and customs, and the failure to enforce and or adopt necessary and appropriate policies, police officers of the Defendant City of Reading, including Defendant Balch, believed that their actions would not be properly monitored by supervisory officers or the City, and also reasonably believed that their misconduct would not be investigated or sanctioned, but would be tolerated and even encouraged.

128. As stated hereinbefore, the promulgation of General Orders, policies, or practices which are directed at creating potential defenses for officers' unconstitutional acts, including the assaultive and non-reporting acts alleged herein, rather than General Orders, policies more practices which are directed at identifying, punishing and eliminating those held unconstitutional acts, and which ignore the Constitutional protections guaranteed to all citizens, constitutes irrefutable evidence of the City, its supervisors and decision-makers, deliberate indifference to those rights.

129. Even where the policies themselves may not be defective and may be wholly appropriate, the Mayor's, Chief's, and City's failure and/or refusal to enforce them promotes the precise police misconduct that Defendant Balch committed here, with impunity.

130. In the incident *sub* judice, despite General Orders requiring the same, the City conducted no independent investigation into its officer, Defendant Balch's unconstitutional assault upon the Plaintiff. It did not discipline him in any way or require his retraining. Its policies and General Orders require Balch to file both an incident report and a use of force report which was then required to carefully be reviewed by supervisors for disciplinary purposes, for purposes of avoiding future such incidents, to determine whether there was a breakdown in policy, practice and or training, to determine whether Defendant Balch's actions were attributable to illicit drug or alcohol use, to determine whether changes in policy or command (or command structure) where in order (including two properly advised decision makers of the incident and to finally determine what can be done in the future) and to avoid, predict or reduce the possibility of harm inflicted upon a citizen like the Plaintiff, by an Reading Police Officer such as Defendant Balch.

131. The above described deficient policies and customs, and the failure to enforce, modify, terminate and/or adopt necessary and appropriate policies, practices, procedures, and General Orders, demonstrate a deliberate indifference on the part of the policymakers of the Defendant City of Reading, and has continued to serve as the moving force behind, and the direct cause of, the violations of the Plaintiff's rights as alleged herein, as well as the damages which resulted therefrom.

132. But for this deliberate indifference, the injuries, which were suffered by the Plaintiff, would, in all likelihood, not have occurred.

**WHEREFOR**E, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against the Defendant City of Reading, and an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the federal District Court for the Eastern District of Pennsylvania, such other relief, including injunctive relief, which the court may find appropriate.

## COUNT IV
### State Assault and Battery
### *Against Defendant Balch*

133. The preceding paragraphs are incorporated herein by reference as though fully set forth.

134. Defendant Balch engaged in willful misconduct by intentionally, willfully, wantonly, and with reckless disregard for the consequences of his horrific acts, assaulting and injuring the Plaintiff as stated hereinbefore.

135. As a result of Defendants' assault and battery, Plaintiff suffered, and will continue to suffer, the damages stated herein.

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court award judgment in Plaintiff's favor and against Defendant Balch, jointly and severally, with the other named Defendants, and an amount in excess of the One Hundred Fifty Thousand ($150,000.00) limit for arbitration in the

36

Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant Balch in his individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT V
## State Constitutional Violations
### *Against All Defendants*

136. The preceding paragraphs are incorporated herein by reference as though fully set forth.

137. The conduct of Defendant Balch, as alleged herein, was violative of the Plaintiff's rights under Article 1, Section 1, Article 1, Section 8, and Article 1, Section 9 of the Constitution of the Commonwealth of Pennsylvania.

138. As a result of this conduct, which was violative of the guarantees afforded Plaintiff under the Pennsylvania Constitution, the Plaintiff suffered, and will continue to suffer, the damages stated herein.

139. To the extent that the Supreme Court of Pennsylvania may still not have ruled on the precise issue of whether any of these sections of the Pennsylvania Constitution provide a private cause of action for monetary damages awardable to its citizens, Plaintiff nevertheless asserts his well-recognized, alternate right to injunctive relief - prohibiting the Defendants from their continued engagement, or facilitation of, in the acts complained of herein.

37

140.    Plaintiff believes and therefore alleges that he is at continuing future risk to suffer the identical harms by these Defendants in the event that court intervention does not occur and/or an appropriate permanent injunction is not entered.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in the form of equitable relief, and on this particular claim, solely equitable relief, monetary relief being otherwise unavailable.

**OTHER**

141.    Plaintiff respectfully requests that a jury deliberate upon the within causes of action.

142.    The within case is not subject to arbitration.

143.    We're permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delayed damages, compensatory damages, punitive damages, and any other damages deemed appropriate by the Court.

144.    Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within-described practices to be unlawful, and enjoining their present and continued employment and effects.

**WHEREFORE**, Plaintiff respectfully requests that this honorable court grant each count alleged:

a. Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs in each of the foregoing counts;

b. Award punitive damages to Plaintiff against the Defendant Balch, in his individual capacity, jointly and severally, with all Defendants, except the City of Reading, in an amount of in excess of $150,000.00 exclusive of interest and cost in each of the foregoing counts;

c. Award reasonable attorney's fees and costs to the Plaintiff as may be affordable pursuant to 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Award Act of 1976, or any other appropriate statutory provisions;

d. Enter an order enjoining Defendants from engaging in the future in any conduct identified in the complaint as violative of 42 U.S.C. §§ 1983, 1988, the 4th and 14th Amendments of the Constitution of the United states, and Article 1, Section 1, Article 1, Section 8, and Article 1 section 9 of the Pennsylvania Constitution; and further affirmatively require the Defendant City of Reading to engage in appropriate remedial efforts to adopt, and enforce policies for the Reading Police Department that are calculated and intended to preclude the excessive force conduct engaged in by Defendant Balch herein, and which has been historically known to be an unconstitutional hallmark of the City of Reading and the Reading Police

Department, and providing for the Court directed independent monitoring the same; and

       e. Awards such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,

Dated: June 5, 2026               By:   /s/ Charles E. Dutko, Esquire
                                           PA Attorney ID No.: 323298
                                           Dutko & Chwiecko
                                           15525 Kutztown Road, Ste. B
                                           Kutztown, PA 19530
                                           (484) 468-4500
                                           cdutko@dutkolaw.com
                                           Attorney for Plaintiff